United States Bankruptcy Court
Southern District of Texas
**ENTERED**
December 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-35133 |
| **ALTA MESA RESOURCES, INC.,** *et al.*, | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | |
| **DAVID DUNN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 21-3792 |
| | § | |
| **QBE INSURANCE CORPORATION,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

David Dunn, as the Trustee of the Alta Mesa Holdings Litigation Trust, sues certain of Alta Mesas's insurers and the class action plaintiffs seeking to recover from those insurers, seeking a declaratory judgment that D&O policies that cover claims made by Dunn do not cover certain claims of the class plaintiffs. Additionally, Dunn seeks an injunction preventing the use of any policy proceeds to pay any settlement or judgment in the class action litigation until the final adjudication of Dunn's action against the directors and officers of Alta Mesa. For the reasons stated below, the declaratory judgment is dismissed without prejudice. The motion to dismiss the claim for injunctive relief is granted in part and denied in part.

### BACKGROUND

Certain former directors and officers of the debtors are defendants in two proceedings: (i) the AMH Litigation Trust's claims for breach of fiduciary duty; and (ii) a securities class action suit against the directors and officers for misrepresentation. (ECF No. 1 at 3). The class action

plaintiffs filed their complaint on March 14, 2019.  (ECF No. 122 at 9).  The debtors filed their bankruptcy petitions under chapter 11 on September 11, 2019.  (Case no. 19-35133 at 1).  Dunn filed the AMH Litigation Trust lawsuit on May 12, 2021.  (ECF No. 122 at 10).  Dunn's request for relief in this lawsuit centers around the proceeds of the D&O Policies, which Dunn contends are inadequate to account for the potential recoveries from both proceedings.  (ECF No. 1 at 1, 2).

The D&O policies at issue include both primary and excess coverage for the defendant directors and officers.  (ECF No. 122 at 11).  In aggregate, the policies provide up to $80 million in insurance coverage.  (ECF No. 122 at 11).  The policies explicitly exclude coverage for any claim arising from any act "actually or allegedly committed or attempted, in whole or in part, prior to February 9, 2018"—the date of the business combination between Alta Mesa and a Special Purpose Acquisition Company (SPAC) which resulted in the organizational structure of the debtors at the petition date.  (ECF No. 1 at 13, 14).  To some degree, the securities class action claims are based on a January 2018 proxy, which solicited votes to approve the business combination.  (ECF No. 1 at 16).  The class action plaintiffs allege that the defendant directors and officers made various misrepresentations in the proxy materials about the potential profitability of the target company, which induced claimants to vote to approve the merger.  (ECF No. 1 at 16).  At least this subset of claims is based on events that necessarily occurred before February 9, 2018.  (ECF No. 1 at 15-17).  The class action plaintiffs also assert fraud claims on behalf of investors who purchased securities between August 16, 2017 and May 17, 2019.  (ECF No. 1 at 16).  Therefore, some—but not all—of the class action claims arise from pre-business-combination behavior and are potentially subject to the coverage exclusion provision of the policies.  (ECF No. 1 at 26).  By contrast, Dunn's breach of fiduciary duty claim against the directors and officers is

based solely on events that occurred after the business combination and could therefore be fully covered . (ECF No. 1 at 21, 22).

Under the terms of the Plan, the AMH Litigation Trust inherited "the AMH Litigation Trust Causes of Action (and any proceeds arising therefrom, including under the D&O Policies)," which included the breach of fiduciary duty claims raised by Dunn against the directors and officers. (Case No. 19-35133, ECF No. 1757 at 4, 37). The AMH Litigation trust also inherited the right to recover proceeds under the D&O polices along with the causes of action. (Case No. 19-35133, ECF No. 1757 at 42). The Plan defines "Section 510(b) Claim" as "any claim arising from the purchase or sale of a Security of the Debtors or an Affiliate of the Debtors," mimicking the language of 11 U.S.C. § 510(b). (Case No. 19-35133, ECF No. 1757 at 22). The findings of fact signed by the Court explicitly state that "for the avoidance of doubt, nothing in this Order or the Plan . . . shall release, enjoin, extinguish, or otherwise affect in any way the claims" in the securities class action. (ECF No. 1778 at 20).

The parties do not dispute that the express terms of the policies preclude coverage for claims arising from wrongful acts which occurred prior to the business combination. In the Insurers' answers to the Complaint, the Insurers do not indicate any intention of using proceeds to pay uncovered claims. (ECF Nos. 113 at 3, 114 at 3, 115 at 3, 116 at 12, 117 at 3, 120 at 2-3, 121 at 3, and 135 at 3). Because the aggregate amount of the relief requested by both Dunn, on behalf of the AMH Litigation Trust, and the class action plaintiffs exceeds the $80 million in available insurance coverage, Dunn filed this adversary proceeding to determine the rights of the various parties in relation to the proceeds. (ECF No. 1 at 25-29). Dunn seeks (i) a declaratory judgment that non-covered class action claims are not contractually entitled to proceeds under the terms of the insurance policies and (ii) an injunction preventing the Insurers or directors and officers from

making payments to class plaintiffs until Dunn's action against the directors and officers is resolved. (ECF No. 1). The class action plaintiffs filed a motion to dismiss this proceeding, arguing that their interest in the proceeds is not subordinate to the Litigation Trust as Dunn claims. (ECF Nos. 113, 114 , 115, 116, 117, 120, 121, and 135). The directors and officers then filed their motion to dismiss, arguing that Dunn lacks standing to request such relief, and, in any case, the relief requested is premature.

## JURISDICTION

As a threshold matter, the parties dispute whether the Litigation Trustee has standing to sue the Insurers. Because there is no actual controversy with respect to the declaratory judgment action, the Court does not have subject matter jurisdiction over it. Therefore, Count I must be dismissed for lack of subject matter jurisdiction under the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b)(1). The Court does, on the other hand, have jurisdiction over the claim for injunctive relief.

### I. THE DECLARATORY JUDGMENT

"In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . ." 28 U.S.C.A. § 2201(a). The Fifth Circuit adopts a three-part test in considering declaratory judgment actions: (i) whether an "actual controversy" exists; (ii) whether the court has authority to grant declaratory relief; and (iii) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (citing *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). The "actual controversy" prong requires an Article III case or controversy. *Id*. A party must have Article III standing for the Court to properly exercise subject

matter jurisdiction. *Abraugh v. Altimus*, 26 F.4th 298, 301 (5th Cir. 2022). Therefore, if there is no actual controversy in the sense required to bring a declaratory judgment action, the claim must be dismissed for lack of subject matter jurisdiction. To meet the actual controversy requirement, "the dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and . . . 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).

Dunn pleads hypothetical facts to support his argument that the Trust will be harmed absent declaratory relief. The Complaint essentially argues that *if* both parties prevail against the directors and officers and *if* the Insurers pay non-covered claims, the Trust would be harmed by the payments on non-covered claims to the extent those payments reduce the Trust's ultimate recovery. Specifically, Dunn asks the Court to declare that the "D&O Policies do not provide coverage for the Proxy Claims" or for "claims made by the Class Plaintiffs (and all persons and entities who become a member of any class certified in the Class Action Litigation) who did not purchase AMR securities based on alleged misrepresentations or omissions made after the business combination" or for "any wrongful acts committed" prior to the business combination. (ECF No. 1 at 30). Dunn has not shown that an actual controversy exists regarding payments on non-covered claims. This is especially true where the parties do not dispute how to interpret the language of the policies. In answering the Complaint, the Insurers agree that claims subject to the explicit coverage exclusions would not be covered by the policies, and the insurers show no intention of

paying non-covered claims.[1]  The Complaint pleads no facts which tend to show there is any real risk non-covered claims will be paid out of the policy proceeds absent declaratory relief. Therefore, payment on non-covered claims is not plausibly a source of harm to the Trust.  This essentially reduces Dunn's concerns on this front to a hypothetical fear.  These tenuous circumstances do not merit declaratory judgment, which would essentially tell the Insurers and defendants what they concede under the terms of the policies—that non-covered claims are not contractually entitled to policy proceeds.

The movants contend that Dunn asks the Court to make findings that would affect the class action. (ECF No. 141 at 21).   Dunn counters that he does not ask the Court to make any factual findings as to specific plaintiffs' claims.  (ECF No. 141 at 21).  Instead, he asks the Court to establish a framework for which sort of findings in the class action would lead to a payout and which would not.  (ECF No. 141 at 21).  Dunn's true concern seems to be whether the Insurers will make payments on non-covered claims to the detriment of the Trust's ability to recover proceeds.  But this is a dispute hypothesized by Dunn, not an actual controversy.  In fact, Dunn concedes the hypothetical nature of his concern in the Complaint, where he admits the "uncertainty regarding the position of the insurers." (ECF No. 1 at 6).  Dunn's motion does no more than plead the conclusory allegation that the Insurers hypothetically *could* make payments on non-covered claims despite a lack of evidence of the likelihood of that occurring.

The core of the parties' dispute is not based on competing interpretations of the insurance policies or whether the Trust will be harmed by payments on non-covered claims.  It centers around

---

[1] QBE, AXIS, Endurance, Allied World, Beazley, Freedom, Zurich, and Everest (The Insurers) all admit that the Policies cover only "wrongful acts," contain a Prior Acts Exclusion, and the Policy Period began on February 9, 2018, all of which potentially preclude coverage for claims to which those provisions are found to apply in the class action proceeding. (ECF Nos. 113 at 3, 114 at 3, 115 at 3, 116 at 12, 117 at 3, 120 at 2-3, 121 at 3, and 135 at 3).

whether the Trust has a right to the proceeds that would be diminished by allowing a race to the courthouse. Resolving that dispute depends not on interpreting the policies or issuing a declaration parroting the policies' terms, but rather on interpreting and enforcing the terms of the Plan and applicable law.

The claim for declaratory relief is dismissed for lack of subject matter jurisdiction as it does not present an Article III case or controversy.

## II. THE PERMANENT INJUNCTION

Count II of the Complaint seeks a permanent injunction preventing the payment of policy proceeds to the class plaintiffs until the Trust resolves its breach of fiduciary duty claims against the directors and officers of Alta Mesa. (ECF No. 1 at 27). Here, an actual controversy does exist, so Dunn has Article III standing to pursue the claim. Dunn seeks to prevent the depletion of the policy proceeds by the class action claims based on the disputed theory that the Trust has a superior right to those proceeds.

The Court has jurisdiction over the claim for injunctive relief under 28 U.S.C. § 1334 as a proceeding "related to" the bankruptcy. A proceeding is "related to" a case under title 11 if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). A bankruptcy court's "related to" jurisdiction narrows post-confirmation. *Natixis Funding Corp. v. GenOn Mid-Atl., L.L.C. (In re GenOn Mid-Atl. Dev., L.L.C.)*, 42 F.4th 523, 534 (5th Cir. 2022). The relevant question for "related to" jurisdiction post-confirmation is whether "the dispute 'pertain[s] to the implementation or execution' of the debtor's reorganization plan[.]" *Id*. (*citing U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002)).

In *GenOn*, the Fifth Circuit concluded that it is not enough that litigation may deplete estate resources to find that a matter is "related to" the execution of a plan of reorganization—such a rule would be far too broad and encompass too many lawsuits. *Id*. at 538. On the other end of the spectrum, the Fifth Circuit clarified that this does not mean a dispute must threaten to "torpedo" a reorganization to find that it relates to the bankruptcy. *Id*. at 537. The dispute merely "must implicate a specific plan's provision or the parties' bankruptcy-law rights or responsibilities." *Id*. at 538. For example, a matter "pertain[s] to the implementation or execution of the bankruptcy plan" where "one of the parties to [a] suit ha[s] assigned its recovery to a trust created by the debtor's plan 'for the benefit of unsecured creditors.'" *Id*. at 536 (*quoting In Re Biloxi Casino Belle Inc.*, 368 F.3d 491 (5th Cir. 2004)).

This post-confirmation dispute involves a claim which was assigned to the AMH Litigation Trust as part of the Plan, arose pre-petition, and involves the determination of the parties' respective rights to insurance proceeds. (ECF No. 1 at 2, 3). It implicates the parties' bankruptcy-law rights and the disputed application of the provisions of a confirmed plan. The Plan established the AMH Litigation Trust for the purpose of evaluating and prosecuting causes of action for the benefit of the holders of Litigation Trust Interests, which includes certain creditors. (Case No. 19-35133, ECF No. 1562 at 41–45). The Plan is, at least in part, premised upon the understanding that certain of Alta Mesa's creditors could later recover from claims brought by Dunn, including the defendants' alleged breach of fiduciary duty. Executing the Plan necessarily involves the pursuit of those claims. Recovery on those claims necessarily involves the disputed insurance proceeds. Dunn argues the Trust beneficiaries have a superior right to those proceeds. Therefore, the dispute pertains to the execution of the Plan, and the Court has "related to" jurisdiction over it. *See GenOn*, 42 F.4th at 536 (*citing Biloxi Casino Belle*, 368 F.3d 491 (5th Cir. 2004)) (providing

an example of "related to" jurisdiction over state-law disputes when "one of the parties . . . assigned its recovery to a trust created by the debtor's plan 'for the benefit of unsecured creditors.'")

### III. THE NO DIRECT ACTION RULE

Standing is a key component of the Article III case or controversy requirement. *See Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007). The directors and officers argue in the motion to dismiss that the Litigation Trustee lacks standing to bring claims against the Insurers under Texas's no direct action rule unless and until the directors' and officers' liability is established in the Litigation Trust's action. (ECF No. 122 at 7). The claim for declaratory relief has already been dismissed for lack of subject matter jurisdiction. The Court only evaluates the no direct action rule to Dunn's standing to bring the claim for injunctive relief.

"Texas law generally does not authorize an injured third-party to sue a liability insurer directly in lieu of suing the tortfeasor . . . . Rather, the tortfeasor's liability must first be finally determined by agreement or judgment." *Petty v. Great W. Cas. Co.*, 783 F. App'x 414, 415 (5th Cir. 2019). The Trust in this case is an "injured third-party" in the sense that it stands in the shoes of Alta Mesa as a tort claimant against the officers and directors. Some courts have found that an exception to the no direct action rule applies where "a shortfall of funds would affect administration of the estate." *See In re marchFIRST, Inc.*, 288 B.R. 526, 532 (Bankr. N.D. Ill. 2002), *aff'd sub nom. Megliola v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003). This Court finds such an exception here.

Dunn alleges that a shortfall of funds threatens to reduce the ultimate recovery of unsecured creditors, and the Plan's terms subordinate the claims of the class action plaintiffs to those of the Litigation Trust beneficiaries. Though the Plan did not give all the policy proceeds to the Trust, it did give the Trust the right to receive proceeds which resulted from the claims the Trust inherited

under the terms of the Plan. The Litigation Trustee has a valid interest in seeking to enforce the Plan by ensuring the Trust has access to those proceeds. Dunn does not ask the Court to "prematurely establish the defendants' liability" or seek to "enforce the insurer's duty to indemnify or pay," but rather seeks injunctive relief preserving the Litigation Trust beneficiaries' rights under the Plan. *See, e.g., Unlimited Servs., LLC v. Anadarko Petroleum Corp.*, No. 4:19-CV-4414, 2020 WL 5046349 at *3 (S.D. Tex. Aug. 6, 2020), *report and recommendation adopted*, No. CV 4:19-4414, 2020 WL 5039499 (S.D. Tex. Aug. 25, 2020). This is not the sort of "direct action" the no direct action rule prevents. Dunn has standing to pursue the injunctive relief requested.

The Court turns to whether Dunn plausibly pleads a factual basis to support his claim for injunctive relief.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) affords defendants relief from a plaintiff's defective complaint. FED. R. CIV. P. 12. Federal Rule of Bankruptcy Procedure 7012(b) applies Rule 12(b) to adversary proceedings. FED. R. BANKR. P. 7012(b).

To defeat a 12(b)(6) motion, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint plausibly states a claim for relief when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Plausibility," at the Rule 12(b)(6) stage, does not mean "possibility." *Id*. at 679. A complaint that offers bare legal conclusions, unsupported by well-pleaded factual allegations tending to establish a plausible basis for relief, must be dismissed. *See id*. at 679–80 (*citing Twombly*, 550 U.S. at 551, 555, 565–67, 570) (explaining that legal

conclusions cannot be taken as true without factual support). The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).

## DISCUSSION

Dunn sufficiently pleads that (i) the Trust has a superior right to the proceeds and (ii) injunctive relief is necessary to prevent harm to the Trust. Dunn asks the Court to issue a permanent injunction against the defendants. The Supreme Court holds that such relief is extraordinary, and

> "[a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). A permanent injunction is not an appropriate remedy where no injury has occurred, and it is currently unclear whether the perceived harm will come to fruition. However, it would be possible for the Court to issue a *preliminary* injunction, pending further review once the monetary value of the claims becomes less speculative.[2] A preliminary injunction preserves the status quo while matters become less speculative and the harms more concrete. For a claim for preliminary injunctive relief to survive dismissal, the Complaint must plead factual allegations tending to show

---

[2] The case law cited by the parties and the parties' discussion focuses on the standards for a preliminary injunction even though the Complaint technically asks for a permanent injunction. Therefore, the Court analyzes the parties' arguments under the standard for issuing a preliminary injunction. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co*., 320 F.2d 594, 606 (5th Cir. 1963)).

> "(1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest."

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).

**I.     SUCCESS ON THE MERITS**

With respect to the first element—success on the merits—both Dunn and the movants misinterpret exactly what "success on the merits" means as it applies on this procedural posture. The movants argue that Dunn must show a substantial likelihood that he will prevail in his breach of fiduciary duty claim against the directors and officers. Dunn counters that it means success on the merits of his claim that the Trust's interest in the proceeds is superior. To survive the motion to dismiss, the Complaint must plausibly plead the substantial likelihood that Dunn will ultimately prevail in his claim against the directors and officers *and* that this would give rise to the situation where the Trust would be harmed by a shortage of policy proceeds.

"An 'absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law.'" *Tex. Med. Providers*, 667 F.3d at 574 (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir.2003)). The directors and officers argue in their motion to dismiss that Dunn fails to plead a likelihood of success on the merits because, as they assert in their motion to dismiss the breach of fiduciary duty claims, they did not owe fiduciary duties to Alta Mesa. (ECF No. 122 at 24). This Court determined, on the contrary, based on Dunn's factual allegations in the complaint against the directors and officers, that three of the directors and officers plausibly owed and breached fiduciary duties. (Case No. 21-03423, ECF No. 90 at 21, 22). By referencing those same allegations in his motion for injunctive relief here, Dunn plausibly pleads success on the merits. A more difficult

questions is whether Dunn plausibly pleads success on the merits of his argument that the Trust's interest in the proceeds would be harmed by a shortage of funds.

## II.   THE TRUST'S INTEREST IN THE PROCEEDS

The second requirement for the preliminary injunction—irreparable harm—hinges on whether Dunn sufficiently pleads facts to show that (i) the Trust has an interest in the proceeds, and (ii) that interest will be harmed by allowing the parties to recover insurance proceeds on a first-come, first-served basis.

Distribution under the Plan depends on the Litigation Trust's ability to bring claims to increase some creditors' ultimate recoveries. The Complaint argues that the terms of the Plan expressly subordinate the claims of the class action plaintiffs to those of the Litigation Trust beneficiaries. (Case No. 19-35133, ECF No. 1562 at 34). As the class plaintiffs point out in their motion to dismiss, while the language of the Plan preserved the effect of § 510(b), the factual findings filed along with the Plan indicate that the securities class action claims are not in any way affected by the Plan. The Plan explicitly provided that "nothing in this Order or the Plan . . . shall release, enjoin, extinguish, or otherwise affect in any way the claims" in the securities class action. (ECF No. 1778 at 20). The issue here is a conflict involving suits against the directors and officers—not the debtor. Section 510(b) only subordinates claims against the debtor and debtor affiliates where it uses the language "for the purpose of distribution under this title," so the class action claims are not § 510(b) claims. The class action claims against the directors and officers are not "510(b) claims" under the Plan, so they were not subordinated by the terms of the Plan. For Dunn's suit for injunctive relief to have a solid legal basis, there must be some other theory by which the Trust could have an interest in the proceeds that might ultimately be payable to the class plaintiffs.

Though Dunn brought the breach of fiduciary duty action post-confirmation, the claim belonged to the debtor and arose pre-petition. The claim was estate property because the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Insurance policies themselves are estate property; that much is not in dispute. *Id*. A different matter, however, is whether the proceeds of liability coverage—like the D&O insurance in this case—are estate property. Because the debtor must have an interest in something for it be part of the debtor's estate, typically "the debtor will not have a cognizable interest in the proceeds of the [liability] policy." *Matter of Edgeworth*, 993 F.2d 51, 56 (5th Cir. 1993). This is because the usual circumstance involves proceeds payable to parties harmed by the debtor, in which case the policy proceeds cannot be said to "inure to the debtor's pecuniary benefit." *Id*. at 55. Here, the debtor is theoretically the tort claimant, not the tortfeasor, and the Trust inherited the debtor's claim under the Plan. The debtor had a pecuniary interest in the proceeds which it passed on to the Trust along with the claim, so the right to seek to collect from proceeds was estate property and is now Trust property.

There is also case law to support the argument that where liability policy proceeds would be insufficient to cover a multitude of claims, the policy proceeds may properly be considered estate property. *In re OGA Charters, L.L.C.*, 901 F.3d 599, 604 (5th Cir. 2018); *see also Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012 (5th Cir. 2012) (holding that proceeds of insurance policy were not estate property where numerous claims did not threaten the limits of the liability coverage). In *OGA Charters*, the Fifth Circuit reasoned that an apparent insufficiency in the policy limits gave the debtor an equitable interest in having the proceeds apply to satisfy as many claims as possible, which was enough to bring policy proceeds into the estate where the debtor faced an onslaught of tort claims. *In re OGA Charters, L.L.C.,* 901 F.3d at 604. Though the posture of this

case differs from *OGA* in that the debtor is not the defendant, the Complaint in this case alleges specific facts relating to the coverage amounts and potential recoveries in both the Trust's and class plaintiffs' claims against the directors and officers which, together, exceed the coverage under the D&O policies. (ECF No. 1 at 12, 22). The result here reflects the situation in *OGA*: the potential monetary recoveries of two groups of claimants threaten to overwhelm the policy proceeds, straining creditors' recoveries.

Not only is there case law suggesting that the estate (and therefore the Trust) had an interest in the proceeds, but there is also some legal basis for finding that interest superior to the interest of other parties. For example, the Seventh Circuit ultimately held in *Fisher* that even though various plaintiffs sued third parties who were not in bankruptcy rather than the debtor's estate, "as creditors with claims so closely related to the . . . estate, the [plaintiffs] must wait their turn behind the trustee, who has the responsibility to recover assets for the estate on behalf of the creditors as a whole." *Fisher v. Apostolou*, 155 F.3d 876, 881 (7th Cir. 1998). Here, the Plan explicitly gave the Litigation Trust the right to pursue the estate's claim and recover policy proceeds to maximize the recoveries of the Trust beneficiaries. Therefore, the equities here arguably parallel the situation in *Fisher*. It is a plausible legal theory that the Litigation Trust, which inherited its interest in the proceeds from the debtor, has a superior right to collect those proceeds as opposed to the class plaintiffs, who must "wait their turn."

The Seventh Circuit ultimately determined that a preliminary injunction was appropriate that would allow the Trustee to liquidate his claims before other creditors could deplete the defendant's available resources. The Fifth Circuit has been much more reticent to enjoin actions against third parties. Indeed, permanently enjoining lawsuits against third parties has been interpreted by the Fifth Circuit as the equivalent of inappropriately extending the discharge

injunction to those third parties. *See Matter of Zale Corp.*, 62 F.3d 746, 761 (5th Cir. 1995) (holding that where the permanent injunction at issue gave enjoined creditors no alternative means of recovery, it impermissibly discharged the debt of a non-debtor). The Fifth Circuit has neither explicitly adopted nor rejected *Fisher*, so the appropriateness of a preliminary injunction prioritizing some creditors' recovery from a third-party insurance company over other creditors remains an open question.

Dunn argues that absent an injunction protecting the estate's interest in the proceeds, the Trust and its beneficiaries would be irreparably harmed. "To be considered irreparable, the injury must be permanent or of long duration. Irreparable harm is neither speculative nor remote but is actual and imminent." *W. Alabama Quality of Life Coal.,* 302 F. Supp. at 683 (*citing Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545, (1987) *and United States v. W.T. Grant Co.*, 345 U.S. 629, 633, (1953)). The complaint sufficiently alleges irreparable harm based on this standard. Should the proceeds be insufficient, and the class plaintiffs allowed to recover from those proceeds prior to the Trust, the Trust will be deprived of its full recovery and have no alternative avenue to recover on a judgment. (ECF No. 1 at 12, 22). The Complaint sufficiently pleads "imminence" because the litigation which could overwhelm the insurance coverage has not just been threatened, it has commenced.

The movants argue that the claim for injunctive relief is premature because Dunn's concerns are too speculative. The purpose of a preliminary injunction is to preserve the status quo, even if the outcome of the lawsuit itself is uncertain. *See, e.g., W. Alabama Quality of Life Coal. v. U.S. Fed. Highway Admin.*, 302 F. Supp. 2d 672, 678 (S.D. Tex. 2004). Dunn does not plead some potential conflict so far off as to ask the Court to wildly speculate as to outcomes. On the contrary, the Complaint references two actions which have actually been filed (not just threatened)

against the directors and officers of Alta Mesa. The Complaint specifically alleges that full recoveries on both causes of action would not be possible given the limits of the insurance coverage and limited personal resources of the directors and officers. (ECF No. 1 at 12, 22). The movants' argument that this is an inaccurate representation of the situation or of the parties' rights does not render the Complaint "speculative" in the sense that it should be dismissed under the *Iqbal/Twombly* standard. Rather, it presents a fact issue which should be preserved for further adjudication.

Moreover, Dunn points out that allowing the proceeds to be distributed on a "first-come, first-served" basis would result in a race to the courthouse in which collection was based not on merit or equity, but rather timing. Again, there is some case law to support Dunn's theory that this is not an outcome that a court of equity should allow. *See, e.g., Landry v. Exxon Pipeline Co.*, 260 B.R. 769 (Bankr. M.D. La. 2001) (holding that allowing recovery of proceeds on a fist come first served basis would result in the unequitable distribution); *See also Fisher, 155 F.3d at 879* (holding that preventing a "race to the courthouse" was not a cognizable harm to the enjoined party). The Complaint sufficiently alleges facts which show it has at least an equal interest in the proceeds which would be harmed to the detriment of unsecured creditors should the class plaintiffs exhaust the insurance proceeds. Therefore, it is unnecessary at this stage to address the merits of his argument that the Trust's interest is superior to the class plaintiffs' interest. Whether some other solution—for example, a *pro rata* distribution of the proceeds based on what the actual judgment amounts turn out to be—would be more appropriate to prevent a "race to the courthouse" is an issue which should be preserved for further adjudication.

**III.  THE BALANCE OF THE HARMS**

The movants argue that the Complaint does no more than plead conclusory allegations that (i) the defendants would not be harmed by the injunction and (ii) granting the injunctive relief would not work against the public interest.  That the Complaint spends little time addressing these elements does not render the pleading conclusory.

With respect to the third element—that the harm to the Trust would be greater than the harm to the defendants Dunn seeks to enjoin—the same facts that support a finding that the Trust has at least an equal interest in the proceeds as the class plaintiffs is sufficient to plead this element for Rule 12(b)(6) purposes.  If that legal conclusion turns out to be true, the class plaintiffs cannot say they would be unduly "harmed" by granting an injunction that preserves the status quo the Plan allegedly created.  Nor would the injunction harm the Insurers or directors and officers because it would not affect the directors' and officers' ultimate liability in either proceeding.  Dunn merely seeks to establish the proper method by which the parties should be paid from the insurance proceeds should both parties prevail in their respective actions.

Granting the injunction would not be overly intrusive or burdensome on the enjoined parties or prevent the class action from settling until after the Trust's claims have been resolved.  On the face of the Complaint, such relief would in no way prevent the class plaintiffs from negotiating a settlement with the Insurers or directors and officers.  Unlike other cases where a trustee did ask the court to completely enjoin litigation, here, Dunn merely asks the Court to preserve the Trust's interest in the policy proceeds.  *See, e.g., In re Palmaz Sci. Inc.*, No. 16-50552-CAG, 2018 WL 1036780 (Bankr. W.D. Tex. Feb. 21, 2018) (enjoining litigation).

The Fifth Circuit holds that the fact that preliminary relief would deprive one party of something by giving it to another does not alone tip the balance of the harms against granting the

relief. *Martinez v. Mathews*, 544 F.2d 1233 at 1243 (5th Cir. 1976). The Complaint argues that, on balance, this element favors granting the preliminary injunction even though it may ultimately curtail the class plaintiffs' interest in the limited insurance proceeds. "These consequences seem to flow inevitably from a decision on the merits for the plaintiffs." *Id*. The class plaintiffs would only be "harmed" in the sense that their recovery would be limited by what rights they have under the Plan and Bankruptcy Code. *See also ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 348 (5th Cir. 2008) (reasoning that it did not impose an undue hardship to give the parties what they had contracted for). Should it turn out that those rights are best preserved through some other equitable solution like a *pro rata* distribution of the proceeds, then the balance would not be tipped in favor of either party. In that case, neither party could be said to bear an "undue burden."

Finally, the Complaint pleads sufficient factual allegations to demonstrate that granting this injunction is not against the public interest. In *Martinez*, the Fifth Circuit found that it was not against the public interest to preserve statutory rights. *Martinez*, 544 F.2d at 1243. Likewise, here, it would not go against the public interest to preserve the parties' respective rights under the terms of a plan. In fact, it serves the public interest for the Bankruptcy Court to be able to protect parties' rights in a confirmed in a chapter 11 plan and ensure the equitable distribution of resources among creditors—even post-confirmation—rather than encourage a race to the courthouse. By alleging a factual basis for the parties' rights by referencing sections of the Plan which give the Trust the right to collect insurance proceeds related to the causes of action it inherited from the debtors and purports not to alter the rights of the class plaintiffs, the Complaint plausibly pleads that the injunctive relief he seeks would not harm the public interest. (ECF No. 1 at 23).

Dunn's Complaint sufficiently pleads the two, over-arching factual bases necessary for his claim for injunctive relief to survive dismissal under Rule 12(b)(6): (i) the Trust has at least an

equal interest in the policy proceeds; and (ii) the proceeds are insufficient to satisfy both parties' claims against the directors and officers. However, as neither case has been reduced to judgment, it is premature for the Court to operate on the assumption that the proceeds will be insufficient. Therefore, the appropriate solution is to deny the motion to dismiss and preserve the issues addressed above for an evidentiary hearing.

## **CONCLUSION**

The motion to dismiss the claim for declaratory judgment is granted. The motion to dismiss the claim for injunctive relief is granted, without prejudice, as to permanent injunctive relief but denied as to preliminary injunctive relief.

A separate order will be entered.

SIGNED 12/12/2022

_____
Marvin Isgur
United States Bankruptcy Judge